UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

THE NATIONAL HEP–CAMP ASSOCIATION,
337 Waldo Hall,
Corvallis, Oregon 97331

*Plaintiff*,

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*,
1600 Pennsylvania Avenue NW
Washington, D.C. 20500;

U.S. DEPARTMENT OF EDUCATION,
400 Maryland Avenue SW
Washington, D.C. 20202; *and*

OFFICE OF MANAGEMENT AND BUDGET,
725 17th Street NW
Washington, D.C. 20503;

*Defendants*.

Case No.:_1:26-cv-3427

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## **Introduction**

1. This case challenges the Trump Administration's decision to punish HEP and CAMP grant applicants at the last minute, contrary to the wishes of Congress, by using a so-called "pocket rescission."

2. The High School Equivalency Program ("HEP") and the College Assistance Migrant Program ("CAMP") are both discretionary grant programs authorized by the Higher Education Act of 1965 that provide student aid to high school and college students from seasonal and migratory farmworking families.

3. Congress established HEP in 1968 and CAMP in 1972, and each program was

initially operated under the Department of Labor before Congress transferred oversight to the Department of Education (the "Department") in 1979. Currently, HEP and CAMP grant programs are coordinated through the Department's Office of Migrant Education.

4. HEP and CAMP grants are five-year grants. 20 U.S.C. § 1070d-2(e). The statute's "Program Authority" provision states: "[t]he Secretary shall maintain and expand existing secondary and postsecondary high school equivalency program and college assistance migrant program projects located at institutions of higher education or at private nonprofit organizations working in cooperation with institutions of higher education." 20 U.S.C. § 1070d-2(a)

5. Eligible recipients of HEP and CAMP grants are institutions of higher education and private nonprofit organizations. Grantees operate HEP and CAMP projects that provide academic, financial, mentoring, and other support to students from agricultural families. HEP helps these individuals earn a high school equivalency credential, such as a GED, while CAMP helps them succeed during the first year of college.

6. The Department historically has awarded new HEP and CAMP grants by holding an annual "competition" for each program. Successful applicants that receive a new five-year grant are funded in twelve-month "budget periods." Each year after the first budget period, provided that a grantee meets certain reporting and performance requirements, the grantee receives a "continuation award" that obligates funding for the successive 12-month budget period. The "budget period" for HEP and CAMP grants is July 1 through June 30.

7. The Administration has placed a target on HEP and CAMP grant programs for the past year and a half. For fiscal year 2025, Congress appropriated $52,123,000 to the Department for carrying out HEP and CAMP programs. Last year, in August 2025, the National HEP–CAMP Association (the "Association") filed a lawsuit against the Department with respect to the

Department's failure to obligate any fiscal year 2025 funds and failure to timely issue both new and continuation awards by July 1, as it had done for decades. *The National HEP–CAMP Association v. U.S. Department of Education*, 1:25-cv-2730 (D.D.C. 2025). After the Association filed suit, the Department belatedly issued continuation awards to certain existing HEP and CAMP grantees but abruptly canceled the fiscal year 2025 grant competitions for both HEP and CAMP. Accordingly, the Department did not make any new HEP or CAMP grant awards in fiscal year 2025.

8. The Administration's intention with respect to HEP and CAMP programs is clear. Like in its fiscal year 2025 Budget Request, the Department's fiscal year 2026 Budget Request asked for zero funding for HEP and CAMP.

9. But Congress disagreed and, like in fiscal year 2025, appropriated $52,123,000 in fiscal year 2026 funds in a line item for HEP and CAMP grant programs.

10. Undeterred by this congressional action, on September 25, 2026, the Office of Management and Budget ("OMB") prepared a package of proposed recissions totaling close to $1 billion that the President transmitted to Congress, including funds appropriated for HEP and CAMP programs, only five days before the statutory deadline to obligate the fiscal year 2026 funds that Congress appropriated for HEP and CAMP grants.

11. Although the rescission package is ostensibly a "proposal" under the Impoundment Control Act of 1974, the Administration clearly did not intend for Congress to take action with respect to the proposal. Instead, the Administration portrays the proposal as a "pocket rescission" that self-enacts upon the expiration of the relevant funds at the end of fiscal year 2026. In the Administration's view, the funds outlined in the rescission package are automatically rescinded by the mere act of sending the proposal to Congress.

12. The Administration's proposal included a rescission for $24,907,509 that Congress appropriated for Special Programs for Migrant Students in the Education for the Disadvantaged budget account, which funds HEP and CAMP grant programs.

13. The Department previously conveyed its intent to obligate these funds to make new HEP and CAMP grant awards pursuant to the fiscal year 2026 grant competitions. *See* Notice Announcing College Assistance Migrant Program Competition, 91 Fed. Reg. 28580 (May 18, 2026); Notice Announcing High School Equivalency Program Competition, 91 Fed. Reg. 28582 (May 18, 2026).

14. Although the Department announced the fiscal year 2026 HEP and CAMP competitions in May 2026, the Department ultimately never made any new awards at all, let alone by July 1, leaving HEP and CAMP grant applicants with a strong sense of déjà vu.

15. Combined with the decision to cancel the fiscal year 2025 HEP and CAMP competitions last year, the Department's decision this year has left more than 70 applicants for HEP and CAMP grant awards with nowhere to turn. Although HEP and CAMP grant programs are codified in law and funded by Congress, the Administration nevertheless seeks to shut them down.

## **Jurisdiction and Venue**

16. Federal question jurisdiction under 28 U.S.C. § 1331 exists because this case arises under the Constitution and laws of the United States, including the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 701–06.

17. The Court has authority to enter a declaratory judgment and to provide preliminary and/or permanent injunctive relief pursuant to Federal Rules of Civil Procedure 57 and 65, 28 U.S.C. §§ 2201–02, the All Writs Act, 28 U.S.C. § 1651, and the Court's inherent equitable powers. The Court also has jurisdiction to issue a writ of mandamus under 28 U.S.C. § 1361.

18. The APA further authorizes the Court to stay, set aside, enjoin, or vacate agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right; in excess of statutory jurisdiction, authority, or limitations; or without observance of procedure required by law. *See* 5 U.S.C. §§ 705–06. The APA also authorizes the Court to compel agency action unlawfully withheld or unreasonably delayed. *See* 5 U.S.C. § 706(1).

19. Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because each Defendant is an agency of the United States that resides in this District, and a substantial part of the events or omissions giving rise to this action, including the preparation and transmission of the rescission package and the Department's decision not to obligate the appropriated funds, occurred in this District.

20. The APA waives sovereign immunity for actions seeking relief other than money damages against federal agencies and officers. *See* 5 U.S.C. § 702.

**Parties**

21. The Association is the sole national advocacy organization in the United States for HEP and CAMP. The Association is a nonprofit located in Oregon and incorporated in the District of Columbia in 2001 that is dedicated to furthering the expansion of opportunities for students in the United States who are from migrant and seasonal farmworker families.

22. HEP and CAMP are the only federal programs that help this unique population of students who face tremendous obstacles to obtain a high school equivalency credential and pursue postsecondary education. The Association comprises more than 80 member institutions of higher education and nonprofit organizations that operate (or seek to operate) either a HEP or a CAMP grant program (or in some cases, operate both).

23. The Association provides numerous services to its members, including education, resources, and technical assistance, and through its members, to the students who participate in HEP and CAMP grant programs. The Association also performs research that informs policymakers, educators, and the public on issues impacting educational opportunities and outcomes for students from migrant and seasonal farm-worker families.

24. Defendant Donald J. Trump is the President of the United States. He is sued in his official capacity.

25. Defendant the U.S. Department of Education is an executive agency of the United States. The Department administers a variety of federal grant programs and is an "agency" within the meaning of the APA. This complaint refers to the U.S. Department of Education as the "Department."

26. Defendant the Office of Management and Budget is a federal agency headquartered in Washington, D.C., and is an "agency" within the meaning of the APA. This complaint refers to the Office of Management and Budget as "OMB."

## Background

### I. HEP and CAMP grant programs

27. HEP and CAMP grant programs are authorized by Section 418A of the Higher Education Act of 1965, as amended.

28. HEP is a discretionary grant program specifically designed to assist migratory and seasonal farmworkers "who are 16 years of age and over" and who "lack a high school diploma or its equivalent." 20 U.S.C. § 1070d-2(b)(1).

29. Once students enroll in HEP projects, recipients are authorized to provide these students "educational services which provide instruction designed to help [them] obtain a general

education diploma which meets the guidelines established by the State in which the project is located for high school equivalency." 20 U.S.C. § 1070d-2(b)(2). Recipients are also authorized to provide students with supportive services, including personal, vocational, and academic counseling, placement services designed to help students pursue postsecondary education or training, find employment, or enter military service, and various other activities and services to improve persistence and retention in postsecondary education. 20 U.S.C. § 1070d-2(b)(5)–(9).

30. CAMP is a discretionary grant program designed to assist migratory and seasonal farmworkers in college. *See* 20 U.S.C. § 1070d-2(c).

31. CAMP similarly authorizes grant recipients to provide services to students, primarily during their first year of college, including "outreach and recruitment services"; "supportive and instructional services to improve placement, persistence, and retention in postsecondary education"; "assistance in obtaining student financial aid"; and "housing support for students living in institutional facilities and commuting students." 20 U.S.C. § 1070d-2(c)(1)(A)–(D).

32. Recipients also must provide "followup services" after students finish the first year of college, including by "monitoring and reporting" on their "academic progress," by ensuring they receive academic, counseling, and financial aid services, and by encouraging students at two-year institutions to transfer to four-year institutions. *See* 20 U.S.C. § 1070d-2(c)(2)(A)–(C).

33. To be eligible to participate in a HEP or CAMP project, a person, or his or her immediate family member, must have spent a minimum of 75 days during the past 24 months as a migrant or seasonal farmworker. *See* 20 U.S.C. §§ 1070d-2(b)(1)(B)(i), 1070d-2(c)(1)(A).

34. A "migrant farmworker" is defined as "a seasonal farmworker . . . whose employment required travel that precluded the farmworker from returning to his or her domicile

(permanent place of residence) within the same day." 34 C.F.R. § 206.5(c)(7).

35. "Immediate family member" means a spouse; a parent, step-parent, adoptive parent, foster parent, or anyone with guardianship; or any person who claims the individual as a dependent on a Federal income tax return for either of the previous two years, or resides in the same household as the individual, supports that individual financially, and is a relative of that individual. *See* 34 C.F.R. § 206.5(c)(5).

36. HEP and CAMP grants are awarded for five years. *See* 20 U.S.C. § 1070d-2(e).

37. The Secretary of Education is required to "maintain and expand existing [HEP and CAMP] program projects" under the Higher Education Act, 20 U.S.C. § 1070d-2(a), and Congress's separate act of appropriating funds to the Department enables the Secretary to carry out these duties.

## II. Congress appropriated fiscal year 2026 funding for HEP and CAMP grants against the Administration's request

38. Although HEP and CAMP grants are made for a five-year period, Congress has consistently appropriated funds for HEP and CAMP grant programs using annual appropriations.

39. "Appropriations" are laws in which Congress grants "budget authority" to federal agencies. Budget authority gives agencies the legal authority to enter into financial "obligations" in the amounts Congress specified that will result in the immediate or future "expenditure" of federal dollars. *See* U.S. Gov't Accountability Off., *A Glossary of Terms Used in the Federal Budget Process*, GAO-05-734SP, at 14, 20–21, 48, 70 (2005), https://www.gao.gov/assets/gao-05-734sp.pdf.

40. In fiscal year 2026, Congress appropriated $52,123,000 to HEP and CAMP grant projects. *See* Pub. L. No. 119-75, div. E, tit. III, 140 Stat. 173, 294 (2026) ("2026 Appropriations Act").

41. Specifically, the 2026 Appropriations Act states with respect to HEP and CAMP grant programs:

> For carrying out title I and subpart 2 of part B of title II of the Elementary and Secondary Education Act of 1965 (referred to in this Act as "ESEA") and section 418A of the Higher Education Act of 1965 (referred to in this Act as "HEA"), $19,127,790,000, of which $8,199,490,000 shall become available on July 1, 2026, and shall remain available through September 30, 2027, and of which $10,841,177,000 shall become available on October 1, 2026, and shall remain available through September 30, 2027, for academic year 2026–2027: Provided, That $6,459,401,000 shall be for basic grants under section 1124 of the ESEA: Provided further, That up to $5,000,000 of these funds shall be available to the Secretary of Education (referred to in this title as "Secretary") on October 1, 2025, to obtain annually updated local educational agency-level census poverty data from the Bureau of the Census: Provided further, That $1,362,301,000 shall be for concentration grants under section 1124A of the ESEA: Provided further, That $5,302,550,000 shall be for targeted grants under section 1125 of the ESEA: Provided further, That $5,302,550,000 shall be for education finance incentive grants under section 1125A of the ESEA: Provided further, That $224,000,000 shall be for carrying out subpart 2 of part B of title II: **Provided further, That $52,123,000 shall be for carrying out section 418A of the HEA**.

*Id*. (emphasis added).

42. Congress appropriated these funds against the wishes of the Administration.

43. In the Department's fiscal year 2026 Budget Request, the Administration wanted to shut down HEP and CAMP grant programs and accordingly requested zero dollars. *See* Department of Education, *Fiscal Year 2026 Budget Summary*, https://www.ed.gov/media/document/fiscal-year-2026-budget-summary-110043.pdf (hereinafter, "FY 2026 Budget Request"). Specifically, the Department stated in the FY 2026 Budget Request:

> The Administration does not request funding for Special Programs for Migrant Students for fiscal year 2026. Elimination of this program is part of the Administration's overall effort to restore fiscal discipline and reduce the Federal role in education. This program is extremely expensive, costing the Federal government as much as $17,000 for each student to obtain a high school equivalency credential. States and localities, not the Federal government, are best suited to determine whether to support the activities

> authorized under this program or similar activities, investing in their own communities in cost-effective ways that are responsive to local needs and without unnecessary administrative burden imposed by the Federal government.

*Id.*

44. To ensure that appropriated funds are actually used for their stated purpose, Congress also included in the 2026 Appropriations Act a governmentwide provision prohibiting the executive branch from unilaterally cutting funding for programs for which the Administration had proposed cutting funding in any of the President's budget proposals unless Congress actually enacted a rescission of those funds.

45. Specifically, Congress provided: "None of the funds made available in this or any other appropriations Act may be used to increase, eliminate, or reduce funding for a program, project, or activity as proposed in the President's budget request for a fiscal year until such proposed change is subsequently enacted in an appropriation Act, or unless such change is made pursuant to the reprogramming or transfer provisions of this or any other appropriations Act." 2026 Appropriations Act, § 739, 140 Stat. at 502.

46. Consequently, because the President's FY 2026 Budget Request proposed eliminating the funding for HEP and CAMP grant programs and Congress did not enact that proposal, the executive branch may not "eliminate" or "reduce" funding for HEP and CAMP grant programs "until such proposed change is subsequently enacted in an appropriation Act."

## III. The Department holds fiscal year 2026 HEP and CAMP grant competitions

47. Following Congress's decision to appropriate fiscal year 2026 funds, the Department published notices announcing HEP and CAMP grant competitions in the Federal Register. *See* 91 Fed. Reg. 28580 (May 18, 2026); 91 Fed. Reg. 28582 (May 18, 2026). Each notice directed applicants to the Grants.gov page that contains instructions for each respective

competition. *See* College Assistance Migrant Program, Assistance Listing Number 84.149A, FY 2026 Grant Competition, https://apply07.grants.gov/apply/opportunities/instructions/PKG00292778-instructions.pdf ("CAMP Instructions"); High School Equivalency Program, Assistance Listing Number 84.141A, FY 2026 Grant Competition, https://apply07.grants.gov/apply/opportunities/instructions/PKG00292777-instructions.pdf ("HEP Instructions").

48. For HEP, the Department estimated making 3–4 new grant awards at an estimated $500,000 per year. *See* HEP Instructions, *supra* ¶ 47. The Department estimated that $11,550,000 was available for new HEP awards. *Id.*

49. For CAMP, the Department estimated making 4–5 new grant awards at an estimated $500,000 per year. *See* CAMP Instructions, *supra* ¶ 47. The Department estimated that $13,014,675 was available for new CAMP awards. *Id.*

50. In sum, the Department estimated that $24,564,675 was available for new HEP and CAMP grant awards.

51. The deadline for each application was June 12, 2026.

52. The Association believes that more than 70 of its member programs timely applied for new HEP and CAMP grant awards.

53. Prior to 2025, the Department has awarded HEP and CAMP grants in advance of July 1 and allowed programs to begin drawing down funds on July 1.

54. The Department, however, never made any HEP or CAMP grant awards in fiscal year 2026, and given the date and time of this filing, the Department clearly does not intend to do so.

## IV. The Administration's "pocket rescission" of HEP and CAMP funds

55. On September 25, 2026, just five days before the September 30, 2026 deadline to obligate the congressionally appropriated HEP and CAMP grant funds, OMB prepared and President Trump transmitted to Congress a special message pursuant to the Impoundment Control Act to propose eleven rescissions of previously appropriated funds totaling approximately $810 million. This rescission package included a proposal to rescind $24,907,509, which is approximately the amount that the Department intended to obligate for new fiscal year 2026 HEP and CAMP grant awards. *See* Rescission Proposal No. R26-4 (the "Rescission Proposal").

56. The Rescission Proposal that the Administration sent to Congress expressly identified the perceived ideology of HEP and CAMP grantees as a reason for unilaterally eliminating their funding.

57. Specifically, the Rescission Proposal stated that HEP and CAMP grants:

> pay[] for seasonal immigrant workers' kids to go to school in the United States and transition to college. The program has previously funded activities such as an LGBT youth summit for "migrant students" and "Therapy for Latinx" workshops. Enacting the rescission would eliminate unnecessary and wasteful spending.

Rescission Proposal, *supra* ¶ 55.

58. The Administration publicly announced the Rescission Proposal as an exercise of unilateral executive authority. The accompanying announcement stated:

> The Department of Education's Special Programs for Migrant Students subsidizes aliens to come to the U.S. and utilize our education system at the expense of American workers and their children. It has previously funded activities such as an LGBT youth summit for "migrant students" and "Therapy for Latinx" workshops.
>
> - Grant recipients included "Immigrants Rising," a non-profit whose support groups included "We Glimmer" for LGBTQ+ aliens, "Therapy for Latinx," and mental health for "Coping with DACA-

> Related Stress," which encouraged aliens to avoid encounters with law enforcement.

*President Trump Takes Historic Action to Eliminate Wasteful and Harmful Spending* (Sept. 25, 2026), https://www.whitehouse.gov/briefings-statements/2026/09/president-trump-takes-historic-action-to-eliminate-wasteful-and-harmful-spending/.

59. In the view of the Administration, this "pocket rescission" theory allows the executive branch to permanently withhold congressionally appropriated funds.

60. In the case of a proposed rescission, once the President transmits the requisite special message, Congress has 45 days to consider the President's proposal and approve it by passing a "rescission bill," which rescinds the agency's authorization to incur financial obligations, in whole or in part. 2 U.S.C. § 682(3); *In re Aiken Cnty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (Kavanaugh, J.) (the "President must propose the rescission of funds, and Congress then may decide whether to approve a rescission bill.").

61. If Congress does not act within 45 days to approve the proposal, the funds are not rescinded and "shall" be made available for obligation. 2 U.S.C. § 683(b).

62. But by proposing a rescission of funds so late in the federal fiscal year, the "pocket rescission" maneuver purports to rescind funds, whether or not Congress approves the proposed rescission, since any unobligated funds would revert to the Treasury at the conclusion of the fiscal year, before Congress acts on the proposal. *See* 2 U.S.C. § 683(b). Accordingly, a "pocket rescission" allows congressionally appropriated funds to lapse without Congress enacting a rescission.

63. However, pursuant to 31 U.S.C. § 1502(b) and the Court's equitable authority, *see City of Houston v. HUD*, 24 F.3d 1421, 1426 (D.C. Cir. 1994) and *Goodluck v. Biden*, 104 F.4th 920, 927–28 (D.C. Cir. 2024), the Court has the authority to suspend the September 30, 2026

expiration of the unobligated fiscal year 2026 funds for HEP and CAMP and preserve their availability for obligation pending further order of the Court.

## V. The impact of the Administration's rescission on the Association and the Association's members

64. Defendants' actions have harmed and will continue to harm the Association and the Association's members by eliminating HEP and CAMP grant programs nationwide. The Association's members rely on the Department's funding to operate and sustain HEP and CAMP grant programs; without this funding, the Association's members will be unable to carry out their missions.

65. The Association's members invested a substantial amount of time and resources to prepare and apply for HEP and CAMP grant awards in each FY 2026 competition. The Association's members developed annual budgets and program plans in reliance on anticipated federal support, and similarly maintained staffing and program capacity to provide services required for HEP and CAMP grant programs.

66. For example, Fort Scott Community College, located in Fort Scott, Kansas, has maintained HEP and CAMP grant programs for years. Because its HEP and CAMP grants expired on June 30, 2026, Fort Scott Community College timely applied for a new HEP grant and a new CAMP grant in both fiscal year 2026 competitions. However, the Department did not award a new HEP or CAMP grant to Fort Scott Community College. Fort Scott Community College is a dues-paying member of the Association.

67. Michigan State University is a dues-paying member of the Association that has operated HEP and CAMP grant programs for years as well. Because Michigan State University's CAMP grant program ended in 2024, Michigan State University timely applied for a new grant in fiscal year 2025. But the Department abruptly canceled that grant competition, *see supra* ¶ 7, so

Michigan State University applied for a CAMP grant again in fiscal year 2026. As a consequence of the Department's and OMB's actions, Michigan State University is once again left empty-handed.

68. Portland Community College is also a dues-paying member of the Association that has long operated HEP and CAMP grant programs. Portland Community College's HEP grant expired on June 30, 2025, and its CAMP grant expired on June 30, 2026. Portland Community College applied for a new HEP grant in the fiscal year 2025 competition, but the Department canceled that competition in September 2025. This year, Portland Community College applied for a new CAMP grant and a new HEP grant as part of the fiscal year 2026 competition, but because of the Department's and OMB's actions, Portland Community College is left with neither a HEP nor a CAMP grant program to operate, let alone the opportunity to compete for either grant.

69. The Department did not inform any of the Association's members about the status of their applications for new HEP and CAMP grants. Federal regulations require that "the Secretary informs an applicant if its application . . . (1) is not evaluated; or (2) is not selected for funding." *See* 34 C.F.R. § 75.218(a).

70. The Association itself has also been harmed by the Department's and OMB's actions. In August 2025, the Association exercised its First Amendment rights to free speech and to petition the government by filing suit, as a named plaintiff, against the Department to challenge its failure to issue both new awards and continuation awards under the same HEP and CAMP grant programs. *See Nat'l HEP–CAMP Ass'n v. Dep't of Educ.*, No. 1:25-cv-2730 (CJN) (D.D.C.). After the Association filed suit, in September 2025 the Department issued continuation awards using the funding that Congress had appropriated, but canceled both the HEP and CAMP grant competitions for fiscal year 2025. *See supra* ¶ 7. After a substantial number of applicants for the canceled fiscal

year 2025 competitions (including a number of Association members) applied again in the fiscal year 2026 competitions, *see, e.g.*, *supra* ¶¶ 66–68, Defendants targeted the same programs for rescission approximately a year after the Association filed suit. *See supra* ¶¶ 55–58. Because of Defendants' actions, the Association's protected speech, petitioning, and expressive activities have been chilled, and a similarly situated organization would be deterred from challenging the Department's administration of the HEP and CAMP grant programs in the future.

## **Causes of Action**

### **Count I**
### **Violation of the First Amendment**
### **Viewpoint Discrimination**

71. The Association incorporates by reference all preceding paragraphs as if fully stated herein.

72. The Association may assert an equitable cause of action to enjoin federal officials from carrying out constitutional violations, including violations of the First Amendment. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010).

73. Defendants violated the First Amendment by eliminating funding for HEP and CAMP grant programs based on disfavor toward the Association's and the Association's members' protected speech, expressive activities, and viewpoints that are irrelevant to funding or activities under HEP and CAMP programs.

74. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech[.]" U.S. CONST. amend. I.

75. The government may not "discriminate against speech on the basis of its viewpoint." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

76. "At the heart of the First Amendment's Free Speech Clause is the recognition that

viewpoint discrimination is uniquely harmful to a free and democratic society." *Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175, 187 (2024). The government may not "use [its] power . . . to punish or suppress disfavored expression." *Id.* at 188.

77. When announcing the transmission of their request to rescind $24,907,509 in HEP and CAMP grant funding, Defendants pointed to HEP and CAMP grantees' constitutionally protected viewpoints and speech as the basis of the decision. *See President Trump Takes Historic Action*, *supra* ¶ 58. Defendants specifically highlighted activities for "LGBTQ+" and "Latinx" groups. *Id.*

78. As a direct and proximate result of Defendants' unlawful actions, the Association and the Association's members have suffered and continue to suffer loss of funding, disruption to their HEP and CAMP grant program operations, and the chilling of protected speech and expressive activities.

**<u>Count II</u>**
**Violation of the First Amendment**
**Retaliation**

79. The Association incorporates by reference all preceding paragraphs as if fully stated herein.

80. The Association and the Association's members have engaged in speech, association, advocacy, and litigation on matters of public concern protected by the First Amendment, including education for migrant farmworkers and a prior lawsuit against the Department with respect to the same HEP and CAMP grant programs. *See Nat'l HEP–CAMP Ass'n v. Dep't of Educ.*, No. 1:25-cv-2730 (CJN) (D.D.C.). This prior litigation challenged the Administration's failure to make HEP and CAMP grant awards for fiscal year 2025 and to issue continuation awards to existing HEP and CAMP grantees.

81. Litigation activity against the federal government is protected by the First Amendment. *See Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 528 (1991) ("We long have recognized the important political and expressive nature of litigation."); *McDonald v. Smith*, 472 U.S. 479, 484 (1985) ("[F]iling a complaint in court is a form of petitioning activity . . . ."); *Ukrainian-Am. Bar Ass'n v. Baker*, 893 F.2d 1374, 1380 (D.C. Cir. 1990) ("[T]he first amendment guarantees the[ ] right to be free of governmental restraints on 'political expression' and that right is violated if the Government affirmatively interferes with constitutionally protected litigation as a form of political expression.").

82. As retaliation for this protected activity, Defendants rescinded $24,907,509 that Congress appropriated for the Department to obligate to HEP and CAMP grant applicants.

83. The Association's and the Association's members' protected activity was a substantial, motivating, and but-for cause of Defendants' rescission of HEP and CAMP grant funds.

84. Defendants did not identify any valid justification for rescinding these funds, such as fraud, misuse of funds, or noncompliance with grant terms, and merely attacked the stated purposes of HEP and CAMP grant projects as well as certain specific services.

85. The Association's members currently participate in other federal grant programs and intend to participate in HEP and CAMP grant programs in the future. Defendants' retaliatory action now is likely to chill the Association's and the Association's members' protected activity, and would deter a similarly situated organization from continuing to engage in protected activity disfavored by Defendants.

86. By rescinding funds that Congress appropriated for HEP and CAMP grant programs because the Association and the Association's members have engaged in speech, association,

advocacy, and litigation on matters of public concern protected by the First Amendment, Defendants have caused the Association and the Association's members to suffer concrete financial and operational harms.

87. "[T]he First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (internal quotation marks omitted). Defendants' actions were taken in response to the Association's and the Association's members' protected speech or expressive activities, constituting unconstitutional retaliation. *Id.*

**<u>Count III</u>**
**Violation of the Administrative Procedure Act**
**Contrary to Law and In Excess of Statutory Authority**

88. The Association incorporates by reference all preceding paragraphs as if fully stated herein.

89. Under the APA, a reviewing court shall "hold unlawful and set aside agency action" that is "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

90. OMB and the Department have made a final decision that the Department will not obligate the full amount of funding that Congress appropriated in the 2026 Appropriations Act. This decision is a final agency action reviewable under the APA.

91. This decision violates the 2026 Appropriations Act because Congress mandated through a line-item appropriation that the Department obligate the full amount to HEP and CAMP grant programs, not a partial amount.

92. This decision also violates the 2026 Appropriations Act because Congress specifically prohibited the Department from using funds to "eliminate, or reduce funding for a

program, project, or activity as proposed in the President's budget request for a fiscal year until such proposed change is subsequently enacted in an appropriation Act, or unless such change is made pursuant to the reprogramming or transfer provisions of this or any other appropriations Act." 2026 Appropriations Act, § 739, 140 Stat. at 502.

93. This decision violates the Higher Education Act, 20 U.S.C. § 1070d-2(a), which requires the Secretary to "maintain and expand" HEP and CAMP grant programs.

94. By refusing to obligate these funds and instead seeking their rescission through the Rescission Proposal, OMB and the Department are attempting to shut down HEP and CAMP grant programs that are statutorily authorized by Congress.

95. Accordingly, OMB's and the Department's conduct is "not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" in violation of the APA.

## Count IV
## Violation of the Administrative Procedure Act
## Arbitrary and Capricious

96. The Association incorporates by reference all preceding paragraphs as if fully stated herein.

97. OMB and the Department have made a final decision that the Department will not obligate the full amount of funding that Congress appropriated in the 2026 Appropriations Act. This decision is a final agency action reviewable under the APA.

98. The Department has long awarded grants before July 1 and made funds available to recipients on July 1. Its failure to do so this year upsets the settled reliance interests of HEP and CAMP applicants, who expected the Department to follow the same schedule.

99. The Department provided no explanation with respect to the decision not to obligate

congressionally appropriated funds for HEP and CAMP grant programs. An agency action is arbitrary and capricious where it is not "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

100. Because OMB and the Department failed to articulate any reasoned explanation for their decision and failed to consider important aspects of the problem, including the reliance interests of HEP and CAMP applicants and Congress's express appropriation, the decision is arbitrary and capricious in violation of the APA. *See* 5 U.S.C. § 706(2)(A); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

**<u>Count V</u>**
**Violation of the Administrative Procedure Act**
**Agency Action Unlawfully Withheld or Unreasonably Delayed**
**Failure to Obligate Funds Appropriated to HEP and CAMP**

101. The Association incorporates by reference all preceding paragraphs as if fully stated herein.

102. Under 5 U.S.C. § 706(1), a reviewing court shall compel agency action unlawfully withheld or unreasonably delayed.

103. The 2026 Appropriations Act requires the Department to obligate the full amount of congressionally appropriated funds for HEP and CAMP grant programs before the funds expire, and the Department does not have discretion to spend less than the full amount. The statute that authorizes HEP and CAMP grants requires the Secretary to "maintain and expand" HEP and CAMP grant programs, and the Department lacks discretion to ignore these duties.

104. OMB and the Department have "unlawfully withheld" these actions. 5 U.S.C. § 706(1).

105. Alternatively, OMB and the Department have "unreasonably delayed" taking these actions.

## <u>Count VI</u>
## Ultra Vires
## Failure to Obligate Funds, to Maintain the HEP and CAMP Grant Programs, and to Comply with the 2026 Appropriations Act

106. The Association incorporates by reference all preceding paragraphs as if fully stated herein.

107. A nonstatutory right of action is also available to challenge federal officials' ultra vires violations of, or actions in excess of authority under, federal statutes. A plaintiff may assert such claims where an official's ultra vires actions are a "clear departure by the [agency] from its statutory mandate" and are "blatantly lawless" violations of statutory requirements. *Fed. Express Corp. v. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022).

108. Defendants' refusal to obligate the full amounts that Congress required to be spent by a specific deadline for HEP and CAMP grant programs is a clear departure from the requirements of the 2026 Appropriations Act and is blatantly lawless.

109. No statute, constitutional provision, or other source of law authorizes Defendants to fail to obligate HEP and CAMP grant program appropriations that Congress has not rescinded. Nor does any statute, constitutional provision, or other source of law authorize Defendants to fail to maintain the HEP and CAMP grant programs that Congress has mandated by statute.

110. Defendants have also violated the specific prohibition in the 2026 Appropriations Act that prohibits Defendants from eliminating or reducing funding for a program that the President proposed cutting but that Congress funded.

111. Pursuant to the Association's nonstatutory right of action, the Court should declare unlawful and enjoin Defendants' ultra vires actions.

**Count VII**
**Mandamus**
**Failure to Obligate Funds and Maintain the HEP and CAMP Grant Programs**

112. The Association incorporates by reference all preceding paragraphs as if fully stated herein.

113. If relief is not available on the Association's APA and ultra vires claims concerning Defendants' failure to obligate congressionally mandated appropriations and failure to maintain the HEP and CAMP grant programs, the Court should enter a writ of mandamus.

114. Defendants have disregarded their clear duties to spend appropriations enacted by Congress for the HEP and CAMP grant programs and to maintain the HEP and CAMP grant programs.

115. Mandamus is warranted "to correct transparent violations of a clear duty to act" by federal officials, including specifically where federal officials refuse to spend congressionally appropriated funds for policy reasons. *In re Aiken Cnty.*, 725 F.3d 255, 258, 261 n.1 (D.C. Cir. 2013).

116. Mandamus is warranted here if the Association is unable to obtain complete relief on the other claims.

**Count VIII**
**Violation of the Separation of Powers and the Spending Clause**
**Failure to Obligate Funds Appropriated to HEP and CAMP**

117. The Association incorporates by reference all preceding paragraphs as if fully stated herein.

118. The Constitution vests exclusive lawmaking power in Congress. *See* U.S. CONST. art. I, § 1. The Constitution further provides Congress the exclusive power of the purse with respect to federal spending. *See* U.S. CONST. art. I, § 8, cl. 1; U.S. CONST. art. I, § 9, cl. 7.

119. The executive branch lacks the constitutional power to ignore statutory mandates because it disagrees with the policies that Congress has enacted. "There is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes." *Clinton v. City of New York*, 524 U.S. 417, 438 (1998). The executive branch has no power to decline to spend funds that Congress has mandated be spent in appropriations acts. *See In re Aiken Cnty.*, 725 F.3d at 261 n.1.

120. By purporting to unilaterally cancel congressionally mandated appropriations, Defendants have usurped Congress's core constitutional power of the purse and violated the separation of powers of the Constitution.

121. The Association is entitled to declaratory and injunctive relief for this constitutional violation.

## **Prayer for Relief**

The Association respectfully requests that this Court enter a judgment against Defendants and award the following relief:

1. Declare unlawful and preliminarily and permanently enjoin Defendants' refusal to obligate all appropriated funds for HEP and CAMP grant programs as violating the First Amendment;
2. Stay, declare unlawful, and preliminarily and permanently enjoin Defendants' decision not to obligate the full amount appropriated in the 2026 Appropriations Act for the HEP and CAMP grant programs, as required by the 2026 Appropriations Act;
3. Stay, declare unlawful, vacate, and preliminarily and permanently enjoin Defendants' decision not to maintain the HEP and CAMP grant programs

as required under 20 U.S.C. § 1070d-2;

4. Stay, declare unlawful, vacate, and preliminarily and permanently enjoin Defendants' decision to eliminate or reduce funding for the HEP and CAMP grant programs, as proposed in the President's budget, in violation of Section 739 of the 2026 Appropriations Act;

5. Declare that the Rescission Proposal did not rescind, cancel, or otherwise extinguish the budget authority that Congress provided for the HEP and CAMP grant programs in the 2026 Appropriations Act, and that Defendants' withholding of those funds is ultra vires and violates the separation of powers;

6. Compel Defendants to obligate the full amount appropriated in the 2026 Appropriations Act for the HEP and CAMP grant programs by September 30, 2026, or such other deadline as the Court provides;

7. Compel Defendants to maintain the HEP and CAMP grant programs as required under 20 U.S.C. § 1070d-2;

8. Pursuant to 31 U.S.C. § 1502(b) and the Court's equitable authority, *see City of Houston v. HUD*, 24 F.3d 1421, 1426 (D.C. Cir. 1994) and *Goodluck v. Biden*, 104 F.4th 920, 927–28 (D.C. Cir. 2024), suspend the September 30, 2026 expiration of the unobligated HEP and CAMP grant funds at issue and preserve availability of the HEP and CAMP grant funds for obligation pending further order of the Court, including, as necessary, beyond September 30, 2026; enjoin Defendants from transferring, reprogramming, or otherwise disposing of these funds in a manner that would frustrate

effective relief; and require Defendants to take all steps within their respective authority necessary to effectuate preservation of these funds;

9. Declare that the Department's failure to obligate congressionally appropriated HEP and CAMP grant funds by September 30, 2026, constitutes agency action unlawfully withheld or unreasonably delayed;

10. Retain jurisdiction as necessary to ensure compliance with the Court's judgment;

11. Award the Association its reasonable attorneys' fees and costs to the extent authorized by law; and

12. Grant any other relief that the Court deems just and proper.

Dated: September 30, 2026

Respectfully submitted,

**THOMPSON COBURN LLP**

/s/ Jayna Marie Rust
Jayna Marie Rust (D.C. Bar No. 998326)
1909 K Street NW, Suite 600
Washington, D.C. 20006
P. (202) 585-6929
E. jrust@thompsoncoburn.com

Brandt P. Hill (*pro hac vice* forthcoming)
2311 Highland Avenue, Suite 330
Birmingham, Alabama 35205
P. (205) 769-4303
E. bhill@thompsoncoburn.com

*Counsel for The National HEP–CAMP Association*